UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GCORP INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0397-B |
| | § | |
| AMDOCS, INC., TELECOM | § | |
| TECHNOLOGY SERVICES, INC., and | § | |
| VIVEKA NANDDHAR DWIVEDI, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff GCorp International, Inc. ("GCorp")'s Motion to Remand (Doc. 12); Defendants Amdocs, Inc. ("Amdocs") and Telecom Technology Services, Inc. ("TTS")'s Motion to Dismiss or Alternatively, Motion for More Definite Statement (Doc. 15); and Defendant Viveka Dwivedi's Motion to Dismiss or Alternatively, Motion for More Definite Statement (Doc. 18). As explained below, the Court **DENIES** GCorp's Motion to Remand (Doc. 12) because Dwivedi, the non-diverse Defendant, was improperly joined at the time of removal. For this reason, the Court **DISMISSES** Dwivedi and **DENIES AS MOOT** Dwivedi's Motion to Dismiss (Doc. 18). And the Court **GRANTS in part** and **DENIES in part** Amdocs and TTS's Motion to Dismiss (Doc. 15). Specifically, the Court **GRANTS** the Motion as to GCorp's claims for intentional destruction and harm to business but **DENIES** the Motion as to GCorp's claims for tortious interference with contract and tortious interference with prospective business relations.

# I.

# BACKGROUND[1]

GCorp is a Texas company that recruits telecommunications engineers and places them on projects with its corporate clients. Doc. 10, Am. Compl., ¶¶ 2.01, 4.02. GCorp regularly recruits its engineers from foreign countries, investing significant resources in their training and immigration sponsorship. *Id.* ¶ 4.02. To protect its investment, GCorp's contracts with its engineers contain noncompetition agreements. *Id.* ¶ 4.03. The inclusion of such agreements is common in the telecommunication engineering industry. *Id.* ¶ 4.09.

In 2012, GCorp agreed to place telecommunications engineers with TTS.[2] *Id.* ¶¶ 4.01, 4.05. "Over the next decade, GCorp successfully placed a number of candidates with TTS." *Id.* ¶ 4.05. GCorp made a profit from each placement, at one point earning more than $100,000 per month from TTS. *Id.* ¶¶ 4.05, 4.07. At some point, TTS decided to cut out the middleman and hire GCorp engineers directly, despite knowing the engineers had signed noncompetition agreements. *Id.* ¶¶ 4.06, 4.09. TTS hired GCorp engineers who were already working on TTS projects or engineers GCorp offered to TTS. *Id.* ¶ 3.04.

GCorp discovered this "poaching" in early 2022. *Id.* ¶ 4.10. Several years earlier, GCorp had hired Dwivedi as an engineer, and he signed a noncompetition agreement with the company.

---

[1] The Court draws the background facts from GCorp's First Amended Complaint (Doc. 10), the operative pleading for the motions to dismiss. As explained below, however, the operative pleading for the Motion to Remand is the Original Petition (Doc. 1-1, Ex. A-2). In its analysis of the Motion to Remand, the Court will note any relevant differences between the Original Petition and the First Amended Complaint.

[2] The relationship between TTS and Amdocs is not immediately clear from the face of the Amended Complaint. GCorp appears to allege that TTS is the predecessor of Amdocs, *see* Doc. 10, Am. Compl., ¶ 3.02 (alleging "GCorp would place or offer to place these engineer candidates directly on TTS (later Amdocs)"), and use the names interchangeably, *see, e.g., id.* ¶ 4.10 (alleging "Dwivedi was working directly for TTS/Amdocs in breach of his non-compete provisions"). In this section, the Court uses "TTS" to refer to both TTS and Amdocs.

*Id.* ¶ 4.04. GCorp alleges TTS offered Dwivedi a raise if he would resign from GCorp and work for TTS. *Id.* ¶¶ 4.13–4.14. Dwivedi did just that. *Id.* ¶ 4.10. In early 2022, GCorp became aware that Dwivedi was working for TTS. *Id.* Further research confirmed GCorp's suspicions that Dwivedi was not the only GCorp engineer TTS had hired away. *Id.* ¶ 4.12. Although GCorp does not know the total number of GCorp engineers TTS has hired, it names ten other engineers it alleges have been poached. *Id.*

On January 4, 2023, GCorp sued Amdocs, TTS, and Dwivedi in Dallas County state court. Doc. 1-1, Ex. A-2, Orig. Pet. GCorp brought tortious interference claims against TTS and Amdocs and civil conspiracy claims against all Defendants. *Id.* ¶¶ 5.01–6.04. Amdocs and TTS removed to this Court, alleging diversity jurisdiction. Doc. 1, Notice Removal, ¶¶ 5–20. Although both GCorp and Dwivedi are citizens of Texas, Amdocs and TTS maintain the Court should disregard Dwivedi's citizenship because he was improperly joined to the action at the time of removal. *Id.* ¶¶ 9–17.

GCorp amended its complaint, dropping its conspiracy claim against Defendants. *See* Doc. 10, Am. Compl. Instead, it asserted claims for tortious interference and "intentional destruction and harm to [GCorp's] business" against Amdocs and TTS and claims for breach of contract and "intentional destruction and harm to [GCorp's] business" against Dwivedi. *Id.* ¶¶ 5.01–7.05. GCorp also filed its Motion to Remand (Doc. 12). In its Motion to Remand, GCorp argued its Amended Complaint states a claim against Dwivedi. Doc. 12, Mot. Remand, ¶ 2.03. It continued, "Based on the amendments to Plaintiff's Complaint[,] diversity does not exist among Defendants and the suit should be remanded to state court." *Id.* ¶ 2.04. While the Motion to Remand was pending, Defendants filed their Motions to Dismiss (Docs. 15 & 18), arguing GCorp failed to state a claim against them. Doc. 15, TTS Mot. Dismiss, 4–14; Doc. 18,

Dwivedi Mot. Dismiss, 5–8. All three motions are now fully briefed, and the Court considers them below.

## II.

## LEGAL STANDARDS

A.   *Motion to Remand for Lack of Subject-Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017). Thus, courts "must presume that a suit lies outside this limited jurisdiction." *Id.* "If the record does not contain sufficient evidence to show that subject matter jurisdiction exists, a federal court does not have jurisdiction over the case." *Id.* (internal quotation omitted).

When a defendant removes an action to federal court, the defendant "has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). Because the burden falls on a defendant to establish jurisdiction, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).

A defendant may remove a case from state to federal court based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332(a), 1441(a). Diversity jurisdiction requires complete diversity, which is "[t]he concept . . . that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004).

Improper joinder constitutes a narrow exception to the rule of complete diversity. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). "A defendant is improperly joined if the moving party establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016). In deciding whether the plaintiff has failed to state a claim against a diverse defendant, courts employ "a Rule 12(b)(6)–type analysis." *Id.* at 206. If a non-diverse defendant was improperly joined, the citizenship of that non-diverse defendant may be disregarded for the purpose of analyzing complete diversity. *Cuevas*, 648 F.3d at 249.

B.  *Motion to Dismiss for Failure to State a Claim*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alterations and internal quotations omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration and internal quotations omitted).

## III.

## ANALYSIS

Before proceeding to the merits, the Court must establish its jurisdiction. Thus, the Court first addresses the Motion to Remand. The Court finds it has jurisdiction because Dwivedi was improperly joined at the time of removal. The Court therefore denies the Motion to Remand, dismisses Dwivedi from the case, and denies Dwivedi's Motion to Dismiss as moot.

The Court then turns to Amdocs and TTS's Motion to Dismiss. First, it addresses GCorp's claims for tortious interference with contract and tortious interference with prospective business relations.[3] Then the Court analyzes GCorp's claims for intentional destruction and harm

---

[3] As Amdocs and TTS correctly note, "Tortious interference with contract and tortious interference with prospective business relations are separate causes of action." *See* Doc. 15, TTS Mot. Dismiss, 1 n.2 (quoting *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 675 (S.D. Tex. 2010) (citing *Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 716–21, 725, 727 (Tex. 2001))). Viewing the Amended Complaint in the light most favorable to GCorp, GCorp asserts both causes of action. *See* Doc. 10, Am. Compl., ¶¶ 5.01–5.09 (alleging tortious interference with contract "and/or" prospective business relations). Thus, although GCorp asserts the claims together, *see id.*, the Court analyzes them separately. *See Rimkus*, 688 F. Supp. 2d at 675.

to its business, which the Court dismisses because they are not an independent cause of action under Texas law.

A.  *The Motion to Remand Is Denied Because Dwivedi Was Improperly Joined at the Time of Removal*

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The Court therefore examines whether Amdocs and TTS have carried their "burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *See Barrois*, 533 F.3d at 327. Amdocs and TTS assert Dwivedi was improperly joined to the action because GCorp's Original Petition fails to state a claim against Dwivedi. Doc. 1, Notice Removal, ¶¶ 9–17. Thus, they argue, the Court has jurisdiction. *Id.* The Court agrees.

As noted above, the Court may disregard the citizenship of a non-diverse defendant for diversity purposes if the plaintiff fails to state a claim against that non-diverse defendant. *See Cuevas*, 648 F.3d at 249; *Int'l Energy*, 818 F.3d at 199. The Court looks to the pleadings at the time of removal. *Gebbia,* 233 F.3d at 883. "[A]s long as a nondiverse party remains joined, the only issue the court may consider is that of jurisdiction itself. . . . This limited authority permits . . . . the court to deny [a motion to remand] if a party is improperly joined and, in so doing, to dismiss the party that has been improperly joined." *Int'l Energy*, 818 F.3d at 209.

Because removal is determined on the basis of the state court complaint at the time of removal, the general rule is a plaintiff cannot defeat removal by amending his complaint. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995). There is a limited exception for amendments that clarify "jurisdictional facts as they existed at the time of removal." *Id.* In the context of improper joinder, courts have allowed post-removal amendments

that clarify a claim asserted against a non-diverse defendant before removal. *See Allbright v. W. Concrete Pumping, Inc.*, 2017 WL 1374180, at *3 (W.D. Tex. Apr. 12, 2017) (collecting cases). But an amended complaint that "does not clarify the jurisdictional facts at the time of removal [and] . . . attempts instead to amend away the basis for federal jurisdiction" does not "divest the federal court of jurisdiction." *See Cavallini*, 44 F.3d at 265. Thus, a plaintiff may not change claims after removal in order to secure a viable claim against a nondiverse defendant. *Bukowski v. Liberty Ins. Corp.*, 2022 WL 1625173, at *5 (W.D. Tex. May 20, 2022).

At the time of removal, GCorp alleged only one claim against Dwivedi: civil conspiracy. Doc. 1-1, Orig. Pet., ¶¶ 6.01–6.04. In the Original Petition, GCorp "alleged that Dwivedi had conspired with [Amdocs and TTS] to interfere with [GCorp's] contract with Dwivedi." Doc. 12, Mot. Remand, ¶ 2.02; *see* Doc. 1-1, Orig. Pet., ¶¶ 4.11, 4.14, 6.02.

Civil conspiracy is a "'derivative tort,' meaning it depends on some underlying tort or other illegal act." *Agar Corp., v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140–41 (Tex. 2019). As such, "a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it." *Id.* at 141. Under Texas law, the elements of tortious interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). "[A] person must be a stranger to a contract to tortiously interfere with it . . . ." *Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997).

In its Original Petition, GCorp alleged Dwivedi interfered with his employment contract with GCorp. *See* Doc. 1-1, Orig. Pet., ¶¶ 4.11, 4.14. But because Dwivedi was a party to that contract at the time, he cannot tortiously interfere with it. *See Morgan Stanley*, 958 S.W.2d at

179. Thus, GCorp's civil conspiracy claim fails because it did not properly allege Dwivedi committed an underlying tort. *See Agar Corp*, 580 S.W.3d at 141. And because GCorp fails to state a claim for civil conspiracy against Dwivedi, Dwivedi was improperly joined at the time of removal. *See Int'l Energy*, 818 F.3d at 199.

GCorp's Amended Complaint does nothing to "clarify the jurisdictional facts at the time of removal [and] . . . attempts instead to amend away the basis for federal jurisdiction." *See Cavallini*, 44 F.3d at 265. GCorp does not argue that it can state a civil conspiracy claim against Dwivedi. *See generally* Doc. 12, Mot. Remand. Instead, GCorp drops its civil conspiracy claim and asserts two new causes of action against Dwivedi. *Compare* Doc. 10, Am. Compl., ¶¶ 6.01–7.05, *with* Doc. 1-1, Orig. Pet., ¶¶ 6.01–6.04. But GCorp cannot avoid remand by "chang[ing] claims in order to secure a viable claim against [Dwivedi]." *See Bukowski*, 2022 WL 1625173, at *5. Because GCorp's Amended Complaint "does not clarify the jurisdictional facts at the time of removal [and] . . . attempts instead to amend away the basis for federal jurisdiction," it does not "divest the [Court] of jurisdiction." *See Cavallini*, 44 F.3d at 265.

Ignoring Dwivedi's citizenship, the Court finds complete diversity between the parties existed at the time of removal. Amdocs is a citizen of Delaware and Missouri, TTS is a citizen of California, and GCorp is a citizen of Texas. Doc. 1, Notice Removal, ¶¶ 6–8. And the amount in controversy exceeds $75,000. *Id.* ¶¶ 18–20. Thus, the Court finds Amdocs and TTS have shown the Court has jurisdiction over this case. *See* 28 U.S.C. § 1332.

Because Dwivedi is improperly joined, the Court only has jurisdiction to decide the jurisdictional question. *See Int'l Energy*, 818 F.3d at 209. The Court must deny the Motion to Remand and dismiss Dwivedi from the case before it can consider the merits. *See id.* ("[A]s long as a nondiverse party remains joined, the only issue the court may consider is that of jurisdiction

itself. . . . This limited authority permits . . . . the court to deny [a motion to remand] if a party is improperly joined and, in so doing, to dismiss the party that has been improperly joined."). The Court therefore **DISMISSES** Dwivedi from this case and **DENIES AS MOOT** his Motion to Dismiss (Doc. 18). Because the Court finds it has jurisdiction, the Court **DENIES** GCorp's Motion to Remand (Doc. 12). Having established its jurisdiction, the Court turns to Amdocs and TTS's Motion to Dismiss (Doc. 15).

B.   *GCorp Has Stated a Claim for Tortious Interference with Contract*

GCorp alleges, "TTS and Amdocs intentionally interfered with GCorp's contracts and/or prospective relations with the GCorp Engineers and/or clients by . . . inducing the GCorp Engineers to breach their agreements with GCorp, instructing GCorp Engineers to mislead GCorp about their employment status and scheming to do the same." Doc. 10, Am. Compl., ¶ 5.04. As mentioned above, under Texas law, the elements of tortious interference with contract are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential*, 29 S.W.3d at 77. To plead the element of a willful and intentional act of interference, a plaintiff must plausibly allege "that the defendant was more than a willing participant and knowingly induced one of the contracting parties to breach its obligations under a contract." *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

Amdocs and TTS argue GCorp fails to state a claim for tortious interference with contract because (1) GCorp has not shown a willful and intentional act of interference and (2) GCorp has not shown proximate causation. Doc. 15, TTS Mot. Dismiss, 5–8. The Court

disagrees and finds GCorp has sufficiently pleaded Amdocs and TTS tortiously interfered with GCorp's contract with Dwivedi.

The Court finds GCorp has plausibly alleged a willful and intentional act of interference with the contract. GCorp had an employment contract with Dwivedi. *Id.* ¶ 4.04. TTS offered Dwivedi a raise if he would resign from GCorp and work for TTS. *Id.* ¶¶ 4.13–4.14. And GCorp alleges Amdocs and TTS were aware of the noncompetition provisions in Dwivedi's contract. *Id.* ¶ 4.09. GCorp enters noncompetition agreements with all its engineers. *Id.* ¶ 4.03. TTS had been working with GCorp for a decade, and the inclusion of such agreements was an "industry-wide practice." *Id.* ¶¶ 4.05, 4.09. The Court finds GCorp has plausibly alleged Amdocs and TTS knew Dwivedi's contract prevented him from working for them and offered him a raise to induce him to violate his contract.

The Court also finds GCorp has plausibly alleged proximate causation. GCorp is paid for each engineer it places. *Id.* ¶ 4.07. Because Dwivedi is employed directly by TTS, GCorp does not receive any payment for his services. *Id.* ¶ 4.13. And GCorp must also pay recruitment costs to replace Dwivedi. *Id.* ¶ 4.15. The Court finds GCorp plausibly alleged Amdocs and TTS's inducement proximately caused GCorp's injury. The Court therefore finds GCorp has plausibly alleged a tortious interference with contract claim against Amdocs and TTS. Amdocs and TTS's Motion to Dismiss is **DENIED** as to this claim.

C.     *GCorp Has Stated a Claim for Tortious Interference with Prospective Business Relations*

GCorp alleges Amdocs and TTS also tortiously interfered with its prospective business relationships. *Id.* ¶¶ 5.01–5.09. To state a claim for tortious interference with prospective business relations, a plaintiff must plausibly plead

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). Amdocs and TTS argue GCorp fails to state a claim. First, they contend GCorp has not plausibly alleged their conduct was independently tortious or unlawful. Doc. 15, TTS Mot. Dismiss, 9–10. And because GCorp has not plausibly alleged independently tortious or unlawful conduct, Amdocs and TTS argue, it also has not shown proximate causation. *Id.* at 10–11.

GCorp argues it has plausibly alleged tortious interference with contract, which satisfies the independently tortious or unlawful conduct element of a tortious interference with prospective business relations claim. As discussed in Section III.B, *supra*, the Court agrees GCorp has plausibly alleged tortious interference with contract. And a well-pleaded tortious interference with contract claim satisfies the "independently tortious or wrongful" element of a tortious interference with prospective business relations claim. *See L.G. Motorsports, Inc. v. NGMCO, Inc.*, 2012 WL 718603, at *9 (E.D. Tex. Mar. 6, 2012), *report and recommendation adopted*, 2012 WL 1080924 (E.D. Tex. Mar. 30, 2012). GCorp has therefore plausibly alleged "[Amdocs and TTS's] conduct was independently tortious or unlawful." *See Coinmach*, 417 S.W.3d at 923.

Amdocs and TTS argue GCorp has not alleged proximate causation only because it has not alleged independently tortious or wrongful conduct. *See* Doc. 15, TTS Mot. Dismiss, 11 ("[GCorp] has failed to sufficiently allege that [Amdocs and TTS's] conduct was independently tortious or unlawful. Therefore, [GCorp] cannot sufficiently plead that [Amdocs and TTS's] conduct is the proximate cause of [GCorp's] injury . . . ."). Because the Court finds GCorp has

plausibly alleged independently tortious or unlawful conduct, Amdocs and TTS's argument regarding proximate causation also fails. Amdocs and TTS's Motion is **DENIED** as to GCorp's tortious interference with prospective business relations claim.

D.      *GCorp's Claim for Intentional Destruction and Harm to GCorp's Business Is Not an Independent Cause of Action*

GCorp asserts a claim against Defendants for "intentional destruction and harm to [its] business." Doc. 10, Am. Compl., ¶¶ 6.01–6.05. Amdocs and TTS argue GCorp's claim is not a valid claim under Texas law and therefore must be dismissed. Doc. 15, TTS Mot. Dismiss, 11. GCorp cites no authority establishing intentional destruction and harm to plaintiff's business as an independent cause of action under Texas or federal law. Nor is the Court aware of any. Because GCorp's claims for intentional destruction and harm to business are not an independent cause of action, they are **DISMISSED WITH PREJUDICE**.

GCorp argues, "The intentional destruction and harm to Plaintiff's business falls within the scope of separate remedies provided by Texas law": (1) tortious interference with contract, (2) tortious interference with prospective business relations, and (3) theft of services under the Texas Theft Liability Act. Doc. 16, Resp. TTS Mot. Dismiss, 10–11. As discussed in Sections III.B and III.C, *supra*, GCorp has stated a claim for tortious interference with contract and tortious interference with prospective business relations against Amdocs and TTS. If GCorp wishes to assert a claim for theft of services against Amdocs or TTS, it must seek leave to amend its complaint. GCorp's general allegation of intentional destruction and harm to its business is insufficient to state a claim.

IV.

CONCLUSION

In sum, the Court **DENIES** GCorp's Motion to Remand (Doc. 12) because Dwivedi, the non-diverse Defendant, was improperly joined at the time of removal. The Court **DISMISSES** Dwivedi and **DENIES AS MOOT** Dwivedi's Motion to Dismiss (Doc. 18). And the Court **GRANTS in part** and **DENIES in part** Amdocs and TTS's Motion to Dismiss (Doc. 15). Specifically, the Court **GRANTS** the Motion as to GCorp's claims for intentional destruction and harm to business but **DENIES** the Motion as to GCorp's claims for tortious interference with contract and tortious interference with prospective business relations.

**SO ORDERED.**

**SIGNED: May 16, 2023.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE