UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GCORP INTERNATIONAL, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0397-B |
| | § | |
| AMDOCS, INC. and TELECOM | § | |
| TECHNOLOGY SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff GCorp International, Inc. ("GCorp")'s Motion for Summary

Judgment (Doc. 59), Defendants Amdocs, Inc. ("Amdocs") and Telecom Technology Services, Inc.

("TTS")'s Motion in Limine (Doc. 50), Motion for Summary Judgment (Doc. 62), Motion to Strike

Plaintiff's Expert Witness Report (Doc. 69), and Motion to Exclude Plaintiff's Supplemental Expert

Report (Doc. 77). For the following reasons, the Court **DENIES** GCorp's Motion for Summary

Judgment (Doc. 59), **GRANTS** Amdocs and TTS's Motion for Summary Judgment (Doc. 62) and

**DISMISSES with prejudice** GCorp's remaining claims. As a result, the Court **DENIES as moot**

Amdocs and TTS's Motion in Limine (Doc. 50), Motion to Strike Plaintiff's Expert Witness (Doc.

69), and Motion to Exclude Plaintiff's Supplemental Expert Report (Doc. 77).

## I.

## BACKGROUND

This case is about one company hiring another company's employees. GCorp recruits

engineers, mostly from foreign countries, and assigns them to projects with GCorp's clients, which

are various companies in the telecommunications industry. Doc. 64, Defs.' App'x, 35–36, 62.

GCorp receives a fee whenever it places an engineer with a client. *See* Doc. 61, Pl.'s App'x, 6. One such client was TTS—GCorp placed at least 14 engineers with TTS between 2009 and 2018. Doc. 64, Defs.' App'x, 41. TTS was later acquired by Amdocs; GCorp never placed any engineers directly with Amdocs. *Id.* at 38. The essence of GCorp's claims is that it is unable to match the salaries offered by large corporations like Amdocs, so its employees leave GCorp in pursuit of higher compensation. *See* Doc. 60, Pl.'s Br. Mot., 8.

As such, each engineer hired by GCorp signs an Employment Services Agreement ("ESA"), which includes a non-compete provision. *See* Doc. 61, Pl.'s App'x, 6. Section 7(e) of the ESA states the following:

> During the period of this Employee Services Agreement and for a term of eighteen (18) months following termination of this Agreement, Employee shall not . . . solicit, directly, indirectly, or otherwise, for the purpose of transacting business, any customer of GCORP, or induce any customer of GCORP to terminate such association with GCORP for purposes of becoming a customer and/or associated elsewhere, or otherwise attempting to sell products or provide services to any existing or past customer of GCORP. Employee shall prevent such solicitation to the extent he/she has authority to prevent same and shall otherwise not interfere with the relationship between GCORP and its customers ("clients"). For purposes of this Agreement, customer shall mean any individual and/or business entity to whom GCORP has sold its services, contracted to sell its services and/or targeted for purposes of selling its services. Employee shall NOT COMPETE, not approach nor solicit any kind of business with GCORP's existing or past - direct clients, middle vendors and/or end clients for a period of eighteen (18) months following the termination of this Employee Services Agreement.

Doc. 64, Defs.' App'x, 18.[1] GCorp's CEO, Gaurav Kumar, interprets Section 7(e) to prohibit GCorp's engineers from working for "any telecom client, whether it's a GCorp client or not." *Id.* at 46.

---

[1] GCorp's CEO, Gaurav Kumar, testified that the ESA has undergone several revisions over the years, but that Paragraph 7, which includes Section 7(e), has remained the same. Doc. 64, Defs.' App'x, 44. So, every former GCorp engineer discussed in this Order signed an ESA that included this version of Section 7(e).

For many years, GCorp has believed that TTS, and its successor Amdocs, have "poached" GCorp's engineers by inducing them to breach the non-compete provisions of their ESAs. *See* Doc. 61, Pl.'s App'x, 6. Indeed, this is not the first time GCorp has sued one of the Defendants alleging they "poached" GCorp's engineers—Amdocs and GCorp previously settled a case in 2015 after GCorp accused Amdocs of hiring GCorp's engineers. *Id.* After the 2015 litigation, a TTS executive refused to hire a former GCorp engineer unless he was "free from" any obligations with GCorp. Doc. 61, Pl.'s App'x, 59. As relevant to this case, GCorp claims that Amdocs and TTS induced four engineers to breach their non-competes: (1) Viveka Dwivedi; (2) Pratim Prakash Rai; (3) Jesus Reyes; and (4) Jose Pedro Langarica Magana. Doc. 60, Pl.'s Br. Mot., 4–5.

GCorp has two remaining claims against Amdocs and TTS: (1) tortious interference with a contract and (2) tortious interference with prospective business relations. Doc. 10, Am. Compl., ¶¶ 5–7; *See* Doc. 23, Mem. Op. & Order, 14 (dismissing GCorp's other causes of action and dismissing Dwivedi from the lawsuit). GCorp argues that it is entitled to summary judgment on both claims, while Amdocs and TTS argue neither claim can survive summary judgment because GCorp has not offered competent summary judgment evidence in support of key elements of these claims. The Court considers the Motions below.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). On a motion for summary judgment, the burden is on the movant to prove that no genuine

issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)).

## III.

## ANALYSIS

Amdocs and TTS move for summary judgment on several grounds, including the following: (1) Section 7(e) of the ESA does not prohibit GCorp's employees from working for GCorp's clients; (2) the ESA is unenforceable on grounds of public policy because it is overbroad and unreasonable; and (3) GCorp has no evidence that Amdocs and TTS engaged in independently tortious conduct. Doc. 62, Defs.' Mot, 2–3. GCorp, on the other hand, argues that it is entitled to judgment as a matter of law on both of its claims. Doc. 60, Pl.'s Br. Mot., 6–9. The Court concludes that Amdocs and TTS are entitled to summary judgment on both of GCorp's claims.

A.      *GCorp Cannot Recover on its Tortious Interference with a Contract Claim Because the Non-Compete is Unenforceable on Grounds of Public Policy.*

Under Texas law, a tortious interference with a contract claim has the following elements: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of America v. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

GCorp fails to establish a triable issue on the first element of its claim for tortious interference with an existing contract because the non-compete provision, as interpreted by GCorp,[2] is unenforceable on grounds of public policy. A claim for tortious interference with a contract cannot be based on a non-compete provision that, as written, is an unreasonable restraint of trade and

_____

[2] The parties dispute whether Section 7(e)'s non-compete provision prohibits GCorp engineers from working for Amdocs and TTS. *Compare* Doc. 63, Defs.' Br. Mot., 16 *with* Doc. 65, Pl.'s Resp., 10–11. The Court assumes without deciding that the ESA's non-compete prohibits engineers from working for Amdocs and TTS for a period of 18 months. However, Amdocs and TTS would also be entitled to summary judgment if Section 7(e)'s non-compete did not prevent GCorp's engineers from working for Amdocs and TTS because they would not have interfered with any contract. *See Prudential Ins. Co. of Am.*, 29 S.W.3d at 77.

therefore unenforceable on grounds of public policy. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 665 (Tex. 1990), *superseded by statute on other grounds as stated in Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). "A covenant not to compete is enforceable if [1] it is ancillary to or part of an otherwise enforceable agreement . . . [and 2] it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable." TEX. BUS. & COM. CODE § 15.50(a). Amdocs and TTS's only argument against the enforceability of the non-compete provision is that it is an unreasonable restraint of trade. Doc. 63, Defs.' Br. Mot., 16–17. Whether a non-compete provision is reasonable is a question of law. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991). A covenant not to compete, or a non-compete provision, is unreasonable if it is broader than necessary to protect the employer's legitimate business interests. *See* TEX. BUS. & COM. CODE § 15.50(a). GCorp has the burden of establishing that the terms of the non-compete provision are reasonable. *Id.* § 15.51(b).

Section 7(e) of the ESA contains the supposed non-compete provision. The non-compete remains in effect for 18 months after the engineers end their employment with GCorp. Doc. 64, Defs.' App'x, 18. "Two to five years has repeatedly been held as a reasonable time in a noncompetition agreement." *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Therefore, Section 7(e) contains reasonable restrictions on time.

However, the ESA is overbroad because it does not have any geographic restrictions. "[T]he absence of a geographical restriction will generally render a covenant not to compete unreasonable." *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 212 (5th Cir. 2018) (citing *Peat Marwick Main & Co.*, 818 S.W.2d at 387)). While Texas courts have found non-compete covenants without any

geographical limitations reasonable in some cases, *see Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 656–57 (Tex. 2006), GCorp has not explained why the absence of geographical restrictions is reasonable here. *See TENS Rx, Inc. v. Hanis*, No. 09-18-00217-CV, 2019 WL 6598174, at *4 (Tex. App.—Beamount Dec. 5, 2019, no pet.) (mem. op.) ("Noncompete covenants with broad geographical scopes have been held unenforceable, particularly when no evidence establishes that the employee actually worked in all areas covered by the covenant." (citation omitted)). Accordingly, the Court finds that the non-compete is unreasonable with regards to geographic area.

Additionally, the ESA's non-compete provision presents two problems regarding the scope of activities it restricts. A non-compete provision that "'extend[s] to clients with whom the employee had no dealings during his employment' or amount[s] to [an] industry-wide exclusion[] [is] 'overbroad and unreasonable.'" *D'Onofrio*, 888 F.3d at 211–12 (internal alterations omitted) (citing *Gallagher Healthcare*, 312 S.W.3d at 654). Here, the ESA is unreasonable both because it extends to clients the GCorp engineers never worked with and because it serves as an industry-wide exclusion.

First, Section 7(e) applies to any past, present, or potential GCorp customer, regardless of whether the engineer performed work for that customer. Doc. 64, Defs.' App'x, 18, 49. Thus, it is "overbroad and unreasonable" under Texas law. *Gallagher Healthcare*, 312 S.W.3d at 654; *see also U.S. Risk, LLC v. Hagger*, 650 F. Supp. 3d 520, 529 (N.D. Tex. 2023) (Godbey, C.J.) ("[The employer] had no legitimate business interest in prohibiting [the former employee] from soliciting customers when he obtained no confidential information and never interacted with them"). While GCorp asserts it is a small, one-man company, Doc. 65, Pl.'s Resp., 11, it appears that GCorp's engineers were not assigned to work on projects for every GCorp client. *See* Doc. 64, Defs.' App'x, 70 (listing several GCorp engineers and the projects they were assigned to while working for GCorp). Thus,

assuming that Section 7(e) does actually bar future employment, it restricts the engineers from later working for GCorp clients that they never interacted with during their GCorp employment. GCorp has no legitimate business interest in preventing its engineers from later working for any customers or clients that the engineers did not interact with while they were employed with GCorp. *See D'Onofrio*, 888 F.3d at 211.

Second, Section 7(e) includes language suggesting the scope of the ESA is so broad as to bar GCorp engineers from working anywhere in the telecommunications industry. In addition to the restrictions discussed above, the ESA prohibits "solicit[ing] any kind of business with GCORP's existing or past - direct clients, middle vendors and/or end clients." Doc. 64, Defs.' App'x, 18. The non-compete provision, therefore, not only applies to GCorp's past, present, and potential clients, it also appears to apply to the entire chain of companies beginning with GCorp providing its services to a client and concluding with the end client receiving a good or service. For example, if GCorp provided services to Amdocs and Amdocs then provided services to a middle vendor, who then provided a final product to an end client, the ESA would prohibit *any* GCorp engineer from working for Amdocs, the middle vendor, or the end client. Thus, taking the express terms of Section 7(e) to their logical extreme renders the non-compete a total industry ban and makes the non-compete broader than necessary to protect GCorp's legitimate interests. *See U.S. Risk Ins. Grp., Inc. v. Woods*, 399 S.W.3d 295, 301 (Tex. App.—Dallas 2013, no pet.) (concluding that a non-compete was unenforceable when it prohibited employees from working in the "business currently engaged in by the [defendant]"). Therefore, this portion of Section 7(e) also constitutes an unreasonable restraint of trade.

GCorp fails to meet its burden of establishing that the ESA's non-compete provision is reasonable. GCorp argues that the non-compete is reasonable because it is "limited to dealings with GCorp's customers, and GCorp is only a small, essentially one man, Gaurav Kumar, company." Doc. 65, Pl.'s Resp., 11. However, as discussed above, the express terms of the ESA suggest otherwise. Furthermore, Kumar testified that he believes the non-compete applies to "any telecom client, whether it's a GCorp client or not." Doc. 64, Defs.' App'x, 46. Lastly, even if the ESA's covenant not to compete was limited to GCorp's existing customers, it would still be unreasonable because it would "extend[] to clients with whom the employee had no dealings during his employment." *See D'Onofrio*, 888 F.3d at 211–12 (citation omitted). Ultimately, GCorp has failed to carry its burden of establishing that the non-compete provisions contained in the ESA are reasonable.

In sum, assuming the ESA's non-compete provision prohibited GCorp engineers from working for Amdocs and TTS, the ESA's non-compete provision is unenforceable on grounds of public policy because its geographical reach and its scope of restricted activities are unreasonable. And because the non-compete is unenforceable on grounds of public policy, GCorp cannot maintain its claim for tortious interference with an existing contract based on allegations that Amdocs and TTS induced GCorp's engineers to breach that non-compete. Accordingly, the Court grants Amdocs and TTS's Motion for Summary Judgment as to GCorp's tortious interference with a contract claim and denies GCorp's motion for the same.

B.   *GCorp Offers No Evidence to Establish Amdocs and TTS Engaged in Independently Tortious Conduct in Support of Its Claim for Tortious Interference with Prospective Business Relations.*

To prevail on its claim for tortious interference with prospective business relations, GCorp must prove:

(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). The third element requires GCorp to prove that Amdocs and TTS engaged in conduct that is "actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

Amdocs and TTS argue that GCorp has produced no evidence that Amdocs and TTS engaged in "any independently tortious conduct." Doc. 63, Defs.' Br. Mot., 23. When, as here, the nonmovant bears the burden of proof on a claim at trial, "the moving party may make a proper summary judgment motion [on that claim] . . . with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). If the movant properly alleges that the nonmovant lacks evidence on an element of his claim, the burden shifts to the nonmovant to "present[] evidence that provides a genuine issue for trial." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). While conclusory allegations "that the nonmovant has no evidence to support his case" are insufficient to shift the burden, allegations "that there is no evidence to support a *specific element* of the nonmovant's claim" suffice. *See Austin*, 864 F.3d at 335 n.10 (emphasis in original).

GCorp has failed to meet its burden of providing evidence sufficient to create a fact issue that Amdocs and TTS engaged in any independently tortious conduct. *See Coinmach Corp.*, 417 S.W.3d at 923. GCorp's briefing suggests that it believes Amdocs and TTS engaged in two forms of independently tortious conduct: (1) that Amdocs and TTS breached their fiduciary duties to GCorp;

and (2) GCorp's underlying claim for tortious interference with a contract. Doc. 60, Pl.'s Br. Mot., 6, 9–10.

GCorp argues that Amdocs and TTS have a fiduciary relationship with GCorp and that Amdocs and TTS breached their fiduciary duties by hiring GCorp's engineers. Doc. 60, Pl.'s Br. Mot., 9–10. However, GCorp failed to plead any facts in the Amended Complaint in support of the theory that Amdocs and TTS engaged in independently tortious conduct by breaching a fiduciary duty. *See generally* Doc. 10, Am. Compl. Further, GCorp did not even discuss the contract that it now claims creates this fiduciary duty in its Amended Complaint. *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009))). Accordingly, the Court will not consider GCorp's new assertions raised for the first time at the summary judgment stage in assessing whether Amdocs and TTS committed an independently tortious act. *See id.* ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment.").

Therefore, GCorp's first Count—its claim for tortious interference with a contract—is the only basis supporting GCorp's argument that Amdocs and TTS engaged in conduct actionable under a recognized tort. *See generally* Doc. 60, Pl.'s Br. Mot.; *see generally* Doc. 65, Pl.'s Resp. This means that GCorp's claim for tortious interference with prospective business relations hinges on the merits of its first Count. *See Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 748–49 (5th Cir. 2015) ("[T]he merits of [the plaintiff's] antitrust claim—the sole 'tortious or unlawful act' alleged—will ultimately determine whether it also has an actionable tortious interference [with prospective

business relations] claim."). The Court determined above that GCorp cannot succeed on Count One, so Amdocs and TTS hiring GCorp's engineers cannot constitute "independently tortious conduct." *See Sturges*, 52 S.W.3d at 726; *see Sanger Ins. Agency*, 802 F.3d at 748–49.

Because GCorp has provided no evidence that Amdocs and TTS committed independently tortious conduct, GCorp cannot create a genuine issue of material fact on the third element of its claim for tortious interference with prospective business relations. Accordingly, the Court grants Amdocs and TTS's Motion for Summary Judgment and denies GCorp's Motion for Summary Judgment as to GCorp's claim for tortious interference with prospective business relations.

C.     *The Court Need Not Rule on Amdocs and TTS's Evidentiary Objections, Motion in Limine, or Motion to Strike GCorp's Expert.*

In addition to the pending Motions for Summary Judgment, Amdocs and TTS also filed a Motion in Limine (Doc. 50), Objections to Plaintiff's Summary Judgment Evidence (Doc. 68), Motion to Strike Plaintiff's Expert Witness (Doc. 69), and Motion to Exclude Plaintiff's Supplemental Expert Report (Doc. 77). Because the Court grants Amdocs and TTS's Motion for Summary Judgment without needing to confront any of the issues raised in these motions, the Court denies them as moot, and the Court declines to rule on Amdocs and TTS's evidentiary objections.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Amdocs and TTS's Motion for Summary Judgment (Doc. 62) and **DENIES** GCorp's Motion for Summary Judgment (Doc. 59). The Court, therefore, **DISMISSES with prejudice** GCorp's claims. The Court also **DENIES as moot** Amdocs and TTS's Motion in Limine (Doc. 50), Motion to Strike Plaintiff's Expert Witness

(Doc. 69), and Motion to Exclude Plaintiff's Supplemental Expert Report (Doc. 77). A final judgment will follow.

      **SO ORDERED**.

      **SIGNED: May 16, 2024**.

                         JANE J. BOYLE
                         UNITED STATES DISTRICT JUDGE